THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JUNIOR L. TOLER, Defendant-Appellant.

(No. 75-205;

Fifth District—October 7, 1975.

Dennis J. Hogan, of Anna, for appellant.

Robert H. Howerton, State's Attorney, of Marion (Bruce D. Irish and Myra J. Brown, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

Defendant, Junior Toler, was convicted of driving while intoxicated, for which he was fined $500 and sentenced to 2 years' probation, conditioned on his serving 90 days in the Illinois State Penal Institution at Vandalia. From his conviction and sentence defendant brings this appeal.

Defendant presents four issues for review, which we feel should be quoted in full rather than paraphrased or summarized by this court:

"(1) Whether unjustified post-arrest pre-trial confinement com-

plained of in the trial court affects the punishment power.

(2) Whether prior to sentencing an accused individual is empowered, by himself or through his attorney of record, to enter a nolle prosequi of an irregular bail bond, recognizance or deposit of bail security.

(3) Whether the trial court loses jurisdiction of the person when there has been an attempt made to execute that Court's illegal sentence of the person.

(4) Whether there was reasonable doubt by reason of major discrepancies affecting the credibility of a witness essential to the strength of the State's case."

Four witnesses testified at the trial, all of whom were law enforcement officers testifying for the State. Michael Milam testified that he was a Federal game warden and special agent for the Crab Orchard Wildlife Refuge. During the early morning hours of May 11, 1974, he was in a truck parked about 150 feet off of Route 148 in the refuge on a "stakeout" for poachers. At approximately 1:49 a.m. he observed a car approaching on Route 148. About 1 2/10 of a mile before the car reached Milam's position, the car stopped and its lights went out. Officer Milam then drove his truck to Route 148 and proceeded to the place where the car was parked. He drove past the car, made a U-turn, and pulled up behind the car. It took approximately 1 minute and 40 seconds to get from the stakeout to the position behind the car. He observed that the car was a 1963 Chevrolet. With the headlights of his truck shining on the car he was able to see the license number of the car, which he radioed in to his radio operator.

Milam approached the car on foot and observed that it had been pulled to the side of the road. He looked into the car and saw someone lying in the back seat. After knocking on the window to arouse the person, he opened the car door and the dome light came on. The person, Junior Toler, climbed over the front seat and got out of the car from the driver's side door. Toler was staggering, his breath smelled of alcohol, and his speech was slurred. After getting Toler's license, Milam had Toler get back into the car, where Toler sat in the driver's seat. Milam then got into his truck and radioed for a State trooper. The trooper, Officer Clarence Ward, arrived 20 minutes later.

Milam stated that he did not see anyone approach the car, hang out of the car, or get in or out of the car from the time he first spotted the car until he himself approached the car. Milam also stated that during that time period he did not see the dome light of the car come on and that if anyone had gotten out of the car they would have had to run 50 or 60 yards from the road to the woods.

Clarence Ward testified that he arrived and, on the basis of his own observation and what Milam told him, arrested Toler for driving while intoxicated. Ward stated that Milam had told him that he had passed the car while he was proceeding in one direction on Route 148 and the car was proceeding in the opposite direction and pulling off the road. Ward stated that when he got Toler out of the car he had to support Toler and he put him in the police car. Ward then got into Toler's car, a 1973 Chevrolet, and drove it off the road. The seat of Ward's pants became wet from the seat of Toler's car. Toler's pants were wet.

Ward stated that he took Toler to police headquarters where Toler was given several tests including the breathalizer. Ward also stated that he had not seen Toler drive the car and that Toler had told him that he had been parked on Route 148 for three hours.

The other two witnesses testified as to the results of the tests administered to Toler and as to the working condition of the breathalizer machine. The results of Toler's breathalysis were .17 and .18.

After the tests were administered the defendant was jailed overnight. The next day the defendant, after having posted $500 bail, was released by the sheriff of Williamson County.

We have put forth much effort in trying to understand the argument made by defendant in respect to the first issue he has raised on this appeal. We have concluded that the defendant is asserting that he should have been given a preliminary hearing to determine if probable cause existed for the arrest made.

The second paragraph of section 7 of article I of the 1970 Constitution of Illinois provides:

> "No person shall be held to answer for a crime punishable by death or by imprisonment in the penitentiary unless either the initial charge has been brought by indictment of a grand jury or the person has been given a prompt preliminary hearing to establish probable cause."

The Committee on Style, Drafting and Submission of the Constitution commented concerning the section as follows:

> "This change makes it clear that a person must either be charged initially by grand jury indictment or given a prompt preliminary hearing before being held to answer for a crime punishable by death or by imprisonment in the penitentiary." 7 Record of Proceedings, Sixth Illinois Constitutional Convention 2600.

The Constitutional Commentary (Ill. Ann. Stat. Const. Art. I, § 7 (Smith-Hurd 1971) states:

> "The second paragraph of Section 7 guarantees persons the right to a prompt preliminary hearing to establish probable cause

for a crime punishable by death or by imprisonment in the penitentiary unless the initial charge has been brought by a grand jury indictment. This right is new in the 1970 Constitution. According to the Bill of Rights Committee Report, which proposed the language adopted in substantial part by the Convention, the provision seeks 'to assure that no person will be held to answer for serious crimes without prompt conformity with these important rights, unless they are understandingly waived.' "

In reference to article I, section 7 the Illinois Supreme Court recently stated:

"Thus under this constitutional provision the defendant held on a criminal charge punishable by imprisonment in the penitentiary must be afforded a prompt probable-cause determination of the validity of the charge either at a preliminary hearing or by an indictment by a grand jury. *People v. Kent*, 54 Ill.2d 161; *People v. Hendrix*, 54 Ill.2d 165." *People v. Howell*, 60 Ill.2d 117, 119, 324 N.E.2d 403.

■■ It is thus clear that in Illinois a person charged with a crime punishable by penitentiary imprisonment or death has a right to either a preliminary hearing or grand jury indictment. It is not clear that a person charged with an offense not so punishable has such right; and we think that the framers of the Constitution, in limiting the application of this section as they did, intended that those other persons not have such right. Driving while intoxicated is not an offense punishable by penitentiary imprisonment or death. (Ill. Rev. Stat., ch. 95½, § 11—501(i).) We therefore, do not feel the defendant in the instant case had a right to a preliminary hearing.

Before leaving this issue, however, we should refer to the recent United States Supreme Court opinion in *Gerstein v. Pugh*, 420 U.S. 103, 43 L.Ed.2d 54, 95 S.Ct. 854. In that case the Supreme Court, without distinguishing between different types of offenses, held that a criminal defendant has a fourth amendment right to a judicial determination of probable cause before he can be subjected to an extended detention following his arrest. Mr. Justice Powell writing for the court stated:

"Under this practical compromise, a policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest. Once the suspect is in custody, however, the reasons that justify dispensing with the magistrate's neutral judgment evaporate.  *  *  *  Accordingly, we hold that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." 420 U.S. 103, 113-14.

In the instant case the defendant, Junior Toler, was released one day after his arrest. Thus, he was not subjected to an "extended restraint of liberty" nor at that point entitled to a judicial determination of probable cause.

■■ Defendant next contends that he was "empowered by himself, or through his attorney of record, to enter a nolle prosequi" of the bail he had posted. On May 13, 1974, defendant posted $500 with the sheriff of Williamson County and was released from jail. The following day the bail bond was filed with the circuit court. On February 27, 1975 at the beginning of the trial, defendant's attorney made the following statement to the court:

> "I would like to say for the record at this time, the Defendant, by myself, Dennis J. Hogan, as his attorney, herewith to the extent that he has power to do so, exercises the executive branch power to enter a nolle pros as to the cash deposit of bail in this case made on May 13th, 1974, receipt No. 14174A of this Circuit Clerk. Thank you."

The court then asked defense counsel if it was his desire to make a motion with respect to the $500 defendant had posted. Defense counsel responded affirmatively and the motion was thereafter denied.

Supreme Court Rule 526(c)(5) (Ill. Rev. Stat., ch. 110A, § 526(c) (5)), provides that $500 may be posted as bail by one charged with driving while intoxicated in situations where the offender wishes to be freed from jail before he has been brought before a judge. Supreme Court Rule 553(a) (Ill. Rev. Stat., ch. 110A, § 553(a)) provides that law enforcement officers who have been designated by name or office by the Chief Judge of the Circuit may take bail under Supreme Court Rules 526, 527, and 528. (Defendant has not asserted on this appeal that the Sheriff of Williamson County was not qualified to accept bail as provided by Rule 553.) Once bail has been posted reduction or increase in the amount of bail is a matter to be determined by the court before which the case is pending. (Ill. Rev. Stat., ch. 38, § 110—6.) Defendant's contention that he can "nolle prosequi" with respect to the bail he has posted is totally without foundation and merits no further discussion.

■■ Defendant's next contention is that the State failed to prove him guilty beyond a reasonable doubt. Defendant concedes that the State adequately proved that he was intoxicated when found in his car during the morning of May 11, 1974. The important question, however, is whether the State proved that the defendant *drove* the car while under the influence of an intoxicant.

The indispensable elements that the State must prove in order to convict a defendant of driving while intoxicated are: (1) that he drove the

car; (2) on a public highway; (3) while intoxicated. (*People v. Jefferson*, 1 Ill.App.3d 484, 275 N.E.2d 176; *People v. Ammons*, 103 Ill.App.2d 441, 243 N.E.2d 709.) Observation of the defendant in the act of driving is not an indispensable prerequisite to conviction of driving while intoxicated, provided the act of driving while intoxicated is established by other credible and substantial evidence, either direct or circumstantial. (*People v. Mundorf*, 97 Ill.App.2d 130, 239 N.E.2d 690; *People v. Schulewitz*, 87 Ill.App.2d 331, 231 N.E.2d 678; *People v. Barnes*, 34 Ill.App.2d 238, 180 N.E.2d 509; *People v. Garnier*, 20 Ill.App.2d 492, 156 N.E.2d 613.) Circumstantial evidence as well as direct evidence is sufficient to sustain a conviction. To support a conviction based on circumstantial evidence it is essential that the facts proved be not only consistent with defendant's guilt, but they must be inconsistent with any reasonable hypothesis of innocence. (*People v. Branion*, 47 Ill.2d 70, 265 N.E.2d 1; *People v. Magnafichi*, 9 Ill.2d 169, 137 N.E.2d 256.) But the People are not required to establish it beyond the possibility of a doubt. *People v. Branion; People v. Hanson*, 359 Ill. 266, 194 N.E. 520.

In *Jefferson* the defendant was charged with driving while intoxicated after the car in which he was found had been involved in a collision with a post. The officer who arrested the defendant testified on direct examination that he discovered the defendant seated at the steering wheel of the car and that the defendant stated that the car went out of control and he struck the post. On cross-examination the officer contradicted himself by stating that he discovered the defendant in the center of the car. In addition the defendant and his wife testified that the wife had been driving the car and that she had left the scene of the accident to get a tow truck. The appellate court held that the defendant had not been proven guilty beyond a reasonable doubt and the conviction was reversed.

In *Ammons* a police officer chased a car which the officer saw veering from one lane to another. The officer could see that two males were in the car. The officer finally caught up with the car after it had been pulled into a driveway; however, the officer found only one man, the defendant in the car. The defendant was intoxicated and lying across the car seat. At the trial the defendant and a man named Wright both testified that Wright had been the driver of the car and that Wright had run into a house after having pulled into the driveway. The defendant's conviction was reversed because he had not been proven guilty beyond a reasonable doubt.

In contrast to *Ammons* and *Jefferson*, are *Garnier, Schulewitz, Mundorf*, and *People v. Jendrzejak*, 98 Ill.App.2d 313, 240 N.E.2d 239. In *Garnier*, the only evidence that the defendant had driven the car while

intoxicated was that he was found seated in the car which was illegally parked some 40 blocks from the place where he had been drinking a short time before. Although there was no direct evidence of his having driven the car, the appellate court found the inference that he had driven the car sufficiently strong to prove him guilty beyond a reasonable doubt. In *Jendrzejak*, the defendant was found alone in a state of intoxication seated in his car which had been driven into a ditch. The officer who discovered the car testified that the defendant admitted owning the car and having driven it into the ditch. The defendant and his wife testified that the wife had been driving the car, not the defendant, and that she had left the scene when she and the defendant quarreled after she drove into the ditch. The defendant's conviction was affirmed.

*Mundorf* and *Schulewitz* are remarkably similar cases. In both of them the defendant was found alone and asleep or passed out behind the steering wheel of a car that was stopped in the middle of a highway. In *Mundorf* the defendant and his wife testified that the wife had driven the car to the shoulder of the road and there she had abandoned him; and the defendant also testified that he had fallen asleep shortly thereafter. The convictions in both *Mundorf* and *Schulewitz* were affirmed.

■■ Our review of the various cases which have dealt with a reasonable doubt issue in a setting similar to that of the instant case provides us with an appropriate reference point for a determination of the reasonable doubt issue in the instant case. In the case before us, although Officer Milam did not see the defendant actually driving the car, Officer Milam did see the car being driven on Route 148, a public highway. Furthermore, no one other than the defendant was found in or near the car, and no one was seen to enter or leave the car. Although Officer Ward testified that defendant Toler had told him that he had been parked along the road for 3 hours, the testimony of Officer Milam was that the car was driven and parked there less than 2 minutes before Milam reached the car. The jury could have believed or refused to believe Milam's statement. It was for the jury to weigh the evidence and determine the credibility of the witnesses. We feel the evidence of defendant's driving, although circumstantial, was sufficient to exclude every reasonable hypothesis of defendant's innocence.

■■ Defendant's final contention is that the trial court "loses jurisdiction of the person when there has been an attempt made to execute that court's illegal sentence of the person." As mentioned above, the trial court on March 14, 1975, imposed a fine of $500 and a sentence of 2 years' probation conditioned upon defendant's serving 90 days at the State Penal Farm at Vandalia, Illinois. Imprisonment in an institution of the Department of Corrections as a condition of probation is no longer

a legal sentencing alternative. Section 5—6—3(d) of the Unified Code of Corrections (Ill. Rev. Stat., ch. 38, § 1005—6—3(d)), effective July 1, 1974, provides:

> "(d) The court shall not require as a condition of the sentence of probation or conditional discharge that the offender be committed to a period of imprisonment in excess of 6 months.
>
> Persons committed to imprisonment as a condition of probation or conditional discharge shall not be committed to the Department of Corrections."

Probation conditioned upon 90 days' imprisonment is a proper sentence under the first paragraph of section 5—6—3(d); the requirement that such imprisonment be served in the Vandalia institution, however, is improper under the second paragraph of section 5—6—3(d). The sentence is therefore modified to 2 years' probation conditioned on 90 days' imprisonment in the Williamson County jail.

Affirmed as modified.

KARNS and CARTER, JJ., concur.